UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE PAULEY

| | |
|---|---|
| DAVID MIRVISH GALLERY LIMITED, and HONEST ED'S LIMITED d/b/a DAVID MIRVISH GALLERY | 13 CV 1216 |
| Plaintiffs, | No._____ |
| -against- | **COMPLAINT** |
| KNOEDLER GALLERY, LLC d/b/a KNOEDLER & COMPANY, | ECF Case<br>Jury Trial Demanded |
| Defendant. | |

RECEIVED
FEB 2 2 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs David Mirvish Gallery Limited and Honest Ed's Limited d/b/a David Mirvish Gallery (together "Mirvish"), for their Complaint against Defendant Knoedler Gallery, LLC ("Knoedler"), hereby allege as follows:

## NATURE OF ACTION

1.     This is an action for breach of contract and breach of the covenant of good faith and fair dealing, or in the alternative, unjust enrichment.  Between 2002 and 2007, Mirvish spent millions of dollars to invest in a painting by the artist Jackson Pollock (the "Silver Pollock") and later to purchase two paintings from Knoedler by Pollock (the "Greenish Pollock" and the "Square Pollock," and together with the Silver Pollock, the "Works").

2.     With respect to the Silver Pollock, Knoedler offered Mirvish an investment in the painting in an effort to defray a significant portion of its acquisition cost.  Mirvish agreed to invest in the Silver Pollock by purchasing the right to receive 50% of the proceeds resulting from its sale.  In exchange for Mirvish's investment, Knoedler agreed to actively market and attempt

1

to sell the Silver Pollock. Knoedler's agreement to do so was a fundamental term of the parties' agreement, without which Mirvish would never have invested in the Silver Pollock.

3.     With respect to the Greenish Pollock and the Square Pollock, which Mirvish purchased outright, Knoedler invoiced Mirvish for the entire amount that Mirvish agreed to pay for sole ownership of the paintings. Mirvish paid 50% of those amounts to Knoedler, and Knoedler extended Mirvish a non-recourse, non-interest bearing loan for the remaining 50% of the agreed-upon purchase prices. As a result of these agreements and Mirvish's payments, Mirvish held title to and owned a 100%, unencumbered and undivided interest in the Greenish Pollock and the Square Pollock.

4.     The parties also agreed that Knoedler had a conditional right to possess the Greenish Pollock and the Square Pollock. Knoedler's right to possession was contingent upon Knoedler actively marketing and attempting to sell the paintings in an effort to realize a profit for both Mirvish and Knoedler. This was a fundamental term of the parties' agreements, without which Mirvish would have never participated in these transactions. In the event that Knoedler sold either painting, the parties agreed that Knoedler would have the right to retain 50% of the sale proceeds, which would be used first to satisfy the non-recourse loan Knoedler had made to Mirvish on the particular painting, with the balance being kept by Knoedler, and the other 50% of the sale proceeds paid to Mirvish.

5.     On November 30, 2011, Knoedler suddenly and unexpectedly publicly announced that it was permanently closing its doors and going out of business, effective immediately. Immediately thereafter, Knoedler commenced winding down and stopped actively marketing or attempting to sell the Works. Knoedler's actions constitute a breach of its agreements with Mirvish and have deprived Mirvish of the benefits of its bargains with Knoedler.

6.     Knoedler has refused to relinquish to Mirvish possession of the Greenish Pollock and Square Pollock, denied that Mirvish owns the Greenish Pollock or Square Pollock, and has not repaid Mirvish the amount it invested in the Silver Pollock.   These actions constitute breaches of Knoedler's contracts with Mirvish, have caused Mirvish damage, and have unjustly enriched Knoedler.

7.     In this action, Mirvish therefore seeks (i) a declaration that it is the sole owner of the Greenish Pollock and the Square Pollock; (ii) a declaration that it is entitled to immediate possession of the Greenish Pollock and the Square Pollock; (iii) an order that Knoedler deliver the Greenish Pollock and the Square Pollock to Mirvish; and (iv) a judgment of restitution for the amount that Mirvish invested in the Silver Pollock.

## PARTIES

8.     Plaintiff David Mirvish Gallery Limited is a company incorporated pursuant to the provisions of the Ontario Business Corporations Act with its principal place of business in Toronto, Ontario.

9.     Plaintiff Honest Ed's Limited d/b/a David Mirvish Gallery is a company incorporated pursuant to the provisions of the Ontario Business Corporations Act with its principal place of business in Toronto, Ontario.

10.     Both David Mirvish Gallery Limited and Honest Ed's Limited are owned by David Mirvish, a Canadian theatre owner and producer and art collector who resides in Toronto, Ontario.   With respect to the Silver Pollock and the Square Pollock, David Mirvish Gallery Limited entered into the agreements with Knoedler at issue in this lawsuit.   With respect to the Greenish Pollock, Honest Ed's Limited d/b/a David Mirvish Gallery entered into the agreement

3

with Knoedler at issue in this lawsuit.  For clarity of presentation, however, these entities are collectively referred to as "Mirvish" throughout the complaint.

11.     David Mirvish formerly ran an art gallery that was open to the public between 1963 and 1978 and was known as the David Mirvish Gallery.  This gallery supported and exhibited contemporary Canadian, American, and British art.  The David Mirvish Gallery was closed to the public in 1978 after a period of 15 years, during which it held approximately 130 exhibitions.  David Mirvish continues to buy and sell works of art privately through David Mirvish Gallery Limited and David Mirvish Gallery and to lend artwork to museums throughout North America and Europe for exhibition.

12.     Upon information and belief, Defendant Knoedler is a Delaware limited liability company with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1332 because this action is between a citizen of a State and a citizen of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Knoedler because it regularly conducts business in New York and because this action arises out of Knoedler's New York business transactions.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Knoedler has its principal place of business in this District and because a substantial part of the conduct giving rise to Mirvish's claims occurred in this District.

## STATEMENT OF FACTS

16.     Between 2002 and 2007, the time frame in which Mirvish entered its agreements with Knoedler regarding the Silver, Greenish, and Square Pollocks, Knoedler was operating out of its own prestigious building and gallery space on East 70th Street in New York and was widely regarded as one of the most venerable, respected, and renowned art galleries in the world with a history dating back to the 1840's.

17.     Knoedler's place in the art world was largely unparalleled.  It had staff for research and record keeping.  It maintained archives on its upper floors that it made available to art historians and scholars.  It had been the gallery of record throughout its history for many prestigious artists, from Winslow Homer to Richard Diebenkorn, Robert Motherwell, Helen Frankenthaler and the Estates of Milton Avery and David Smith.  It had a long and distinguished record of presenting important exhibitions, publishing scholarly catalogues, and selling high-quality works, including works of Jackson Pollock that were listed in the catalogue raisonné of that artist, to recognized collectors.

18.     Around the time Knoedler offered Mirvish the opportunity to invest in or purchase the Works, Knoedler and its then-President, Ann Freedman, disclosed to Mirvish all material facts known to Knoedler concerning the provenance of the Works.

19.     Based on these disclosures, as well as Mirvish's independent judgment that the Works are authentic, Mirvish was prepared to invest in the Silver Pollock and purchase the Greenish and Square Pollocks.  Because of Knoedler's prestigious reputation and history, as well as its substantial resources and connections in the art world, Mirvish was prepared to let Knoedler retain possession of the Works as long as Knoedler used those resources and connections to market and attempt to sell the Works.

### The Silver Pollock

20.     The Silver Pollock is a 15″ x 28½″ work by Jackson Pollock that was painted with oil, enamel, and aluminum paint on masonite mounted on wood.  Mirvish believes the work was painted by the artist in 1949 or 1950.

21.     In or around May 2002, Knoedler offered Mirvish the opportunity to invest in the Silver Pollock.

22.     Mirvish was advised that the painting came with an indeterminate provenance and was part of a group of previously unknown works by some of the greatest contemporary artists of the 1940's and 1950's.  The first painting from this group of works had been acquired by Knoedler in or around 1995 from Glafira Rosales ("Rosales"), an art dealer and agent for the owner.

23.     Knoedler had engaged Dana Cranmer, a noted art conservationist who was known to Mirvish, to conduct a physical examination of each of the works as it was acquired.  Knoedler had also engaged E.A. Carmean, the former chief curator of 20th century art at the National Gallery and noted art scholar, who was also known to Mirvish, to conduct research into these works.

24.     The Silver Pollock and the other works from Rosales that David Mirvish saw were, in his assessment, of high quality and historically important.

25.     Knoedler purchased the Silver Pollock from Rosales for $950,000 in 2002.

26.     Knoedler paid $475,000 to Rosales from its own funds and contemporaneously sold Mirvish a 50% investment interest in the Silver Pollock for $1.6 million.  Thus, the end result of the transaction was that Knoedler held title to the Silver Pollock, and Knoedler recorded a profit of $1.125 million.

6

27.     Knoedler and Mirvish agreed that each would share equally in the profits of any sale of the Silver Pollock.   Attached hereto as Exhibit 1 is the May 15, 2002 invoice that Knoedler sent to Mirvish regarding its investment in the Silver Pollock.

28.     Knoedler and Mirvish also agreed that Knoedler would attempt to market and sell the Silver Pollock.   This condition was a fundamental term of the parties' agreement, without which Mirvish would have never invested in the Silver Pollock.   Mirvish's investment in the Silver Pollock was worthless absent Knoedler's agreement to market and sell the painting.

29.     REDACTED

30.     Knoedler has stopped marketing and attempting to sell the work, in violation of the parties' agreement.

31.     Knoedler has not paid to Mirvish the money that it invested in the Silver Pollock.

**The Greenish Pollock**

32.     The Greenish Pollock is an 18″ x 23″ untitled work by Jackson Pollock painted with oil and enamel paints on canvas mounted on masonite.   Mirvish believes the work was painted by the artist in 1949.

33.     In early 2001, Knoedler purchased the Greenish Pollock from Rosales for $750,000.

34.     In December 2001, Knoedler sold the Greenish Pollock to an individual named Jack Levy for $2 million.   The sale to Levy was conditioned on the International Foundation for Art Research's ("IFAR") evaluation of the Greenish Pollock.   Specifically, Knoedler and Levy

agreed that if IFAR was unable to authenticate the work or disagreed with the work's attribution to Jackson Pollock, Knoedler would accept return of the painting and refund the money to Levy.

35.     In October 2003, IFAR issued a report stating that it was unable to reach a definitive conclusion as to the authenticity or provenance of the Greenish Pollock.  On the basis of that report, Levy asked Knoedler to repurchase the Greenish Pollock, which Knoedler agreed to do for the original purchase price Levy had paid of $2 million.

36.     Knoedler subsequently approached Mirvish about repurchasing the Greenish Pollock from Levy.  Mirvish informed Knoedler that he was "delighted to have the opportunity to purchase the [Greenish Pollock]."  Under the agreement reached between Knoedler and Mirvish, the terms of which are embodied in a December 2003 letter from Mirvish to Knoedler that is attached hereto as Exhibit 2, Mirvish agreed to purchase a 100%, unencumbered and undivided ownership interest in the Greenish Pollock, "with clear title," for the sum of $2.5 million.

37.     On December 16, 2003, Knoedler sent Mirvish an invoice for $2.5 million regarding his purchase of the Greenish Pollock.  Attached hereto as Exhibit 3 is the December 16, 2003 invoice Knoedler sent to Mirvish regarding his purchase of the Greenish Pollock.

38.     Under this agreement, Mirvish immediately paid $1.25 million to Knoedler, which resulted in an immediate transfer of title and ownership to Mirvish.  Knoedler contributed the other $1.25 million of the purchase price as a non-recourse, non-interest bearing loan to Mirvish in accordance with the terms of the agreement.

39.     Knoedler and Mirvish agreed that Knoedler would be permitted to retain possession of the Greenish Pollock for the sole purpose of marketing and trying to sell the work

for a profit. Knoedler's promise to market and sell the work was a fundamental term of the parties' agreement.

40.     Knoedler and Mirvish agreed that, upon the sale of the Greenish Pollock, Knoedler would be entitled to retain 50% of the proceeds, which it would first use to repay the non-recourse loan it had extended to Mirvish with respect to this work. The balance of that 50% would be kept by Knoedler and Ann Freedman, as they had separately agreed, and the other 50% of the proceeds of the sale would be paid to Mirvish.

41.     In November 2011, Knoedler permanently closed its doors and stopped marketing and attempting to sell the Greenish Pollock, in breach of its agreement with Mirvish.

42.     Knoedler has retained possession of the Greenish Pollock and has refused to deliver the painting to Mirvish.

**The Square Pollock**

43.     The Square Pollock is a 22″ x 22″ work by Jackson Pollock painted with oil and aluminum paint on masonite. Mirvish believes the work was painted by the artist in 1950.

44.     Knoedler purchased the Square Pollock from Rosales in May 2007 for $2.25 million.

45.     In December 2007 Mirvish agreed to purchase the Square Pollock from Knoedler for $4 million. This purchase was carried out on the same terms that Mirvish had purchased the Greenish Pollock. Attached hereto as Exhibit 4 is the December 18, 2007 invoice that Knoedler sent to Mirvish regarding his purchase of the Square Pollock.

46.     Under this agreement, Mirvish paid $2 million to Knoedler, which resulted in an immediate transfer of title and ownership to Mirvish. Knoedler contributed the other $2 million of the purchase price as a non-recourse, non-interest bearing loan to Mirvish.

47.    Knoedler and Mirvish also agreed that Knoedler would retain possession of the Square Pollock for the sole purpose of marketing and trying to sell the work for a profit. Knoedler's promise to market and sell the work was a fundamental term of the parties' agreement.

48.    The parties agreed that, upon the sale of the Square Pollock, Knoedler would be entitled to retain 50% of the proceeds of sale, which it would use first to repay the non-recourse loan it had extended to Mirvish with respect to this work.  The balance of that 50% would be kept by Knoedler, and the other 50% of the sale proceeds would be paid to Mirvish.

49.    In November 2011, Knoedler permanently closed its doors and stopped marketing and attempting to sell the Square Pollock, in breach of its agreement with Mirvish.

50.    Knoedler has retained possession of the Square Pollock and has refused to deliver the painting to Mirvish.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Regarding the Silver Pollock)

51.    Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52.    Mirvish paid Knoedler $1.6 million to acquire an investment interest in the Silver Pollock, pursuant to which Knoedler would retain title to the Silver Pollock, but Knoedler and Mirvish would share equally in any proceeds that resulted from the sale of the Silver Pollock.

53.    In exchange for Mirvish purchasing an investment interest in the Silver Pollock, Mirvish and Knoedler agreed that Knoedler would market and attempt to sell the work. Knoedler and Mirvish agreed that Knoedler's right to retain the amount Mirvish invested in the

10

Silver Pollock would continue unless and until Knoedler stopped marking and attempting to sell the Silver Pollock.

54.      Knoedler breached its contract with Mirvish when it stopped marketing and attempting to sell the Silver Pollock.

55.      Knoedler's right to retain the amount Mirvish invested in the Silver Pollock has terminated as a result of its breach of contract.

56.      Knoedler has breached the parties' agreement by not repaying Mirvish the amount it invested in the Silver Pollock.

57.      Mirvish has performed all aspects of its agreement with Knoedler with respect to its investment in the Silver Pollock.

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(Regarding the Greenish Pollock)**

58.      Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

59.      Mirvish purchased the Greenish Pollock from Knoedler for $2.5 million, $1.25 million of which it paid to Knoedler immediately after the agreement was entered into, and $1.25 million of which Knoedler lent to Mirvish in the form of a non-recourse, non-interest bearing loan.

60.      Mirvish received clear title to and exclusive ownership of the Greenish Pollock immediately upon paying Knoedler $1.25 million for the work.

61.      Mirvish and Knoedler agreed that Knoedler would retain possession of the Greenish Pollock unless and until Knoedler stopped marketing and attempting to sell the work.

62.     Knoedler breached its contract with Mirvish in or around November 2011, when it permanently shut down its business and stopped marketing and attempting to sell the Greenish Pollock.

63.     Knoedler's conditional right to possess the Greenish Pollock has terminated as a result of its breach of contract.   Under the parties' agreement, Knoedler is required to immediately deliver the Greenish Pollock to Mirvish, who is the exclusive owner of the work.

64.     Knoedler has breached the parties' agreement by refusing to deliver the Greenish Pollock to Mirvish.

65.     Mirvish has performed all aspects of its agreement with Knoedler with respect to its purchase of the Greenish Pollock.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(Regarding the Square Pollock)**

66.     Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 65 as if fully set forth herein.

67.     Mirvish purchased the Square Pollock from Knoedler for $4 million, $2 million of which it paid to Knoedler, and $2 million of which Knoedler lent to Mirvish in the form of a non-recourse, non-interest bearing loan.

68.     Mirvish received clear title to and exclusive ownership of the Square Pollock immediately upon paying Knoedler $2 million for the work.

69.     Mirvish and Knoedler agreed that Knoedler would retain possession of the Square Pollock unless and until Knoedler stopped marketing and attempting to sell the work.

70.     Knoedler breached its contract with Mirvish in or around November 2011, when it permanently shut down its business and stopped marketing and attempting to sell the Square Pollock.

71.     Knoedler's conditional right to possess the Square Pollock has terminated as a result of its breach of contract.   Under the parties' agreement, Knoedler is required to immediately deliver the Square Pollock to Mirvish, who is the exclusive owner of the work.

72.     Knoedler has breached the parties' agreement by refusing to deliver the Square Pollock to Mirvish.

73.     Mirvish has performed all aspects of its agreement with Knoedler with respect to its purchase of the Square Pollock.

### FOURTH CAUSE OF ACTION
**Breach of the Covenant of Good Faith and Fair Dealing**
**(Regarding the Silver Pollock)**

74.     Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

75.     When Mirvish agreed to purchase a 50% investment interest in the Silver Pollock, both Knoedler and Mirvish understood that a fundamental term of the parties' agreement was Knoedler's promise to market and attempt to sell the work.

76.     Knoedler and Mirvish understood and agreed that Mirvish would be entitled to half of the proceeds from the sale of the Silver Pollock or to a return of his investment in the event that Knoedler ceased marketing or attempting to sell the work.

77.     Knoedler has ceased marketing and attempting to sell the work, thereby depriving Mirvish of the fruits of its agreement with Knoedler.  Knoedler's conduct constitutes a breach of

the implied covenant of good faith and fair dealing and automatically terminates Knoedler's conditional right to retain Mirvish's investment in the Silver Pollock.

78.    Knoedler has not repaid to Mirvish the amount it invested in the Silver Pollock, in further breach of the covenant of good faith and fair dealing.

### FIFTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (Regarding the Greenish Pollock)

79.    Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 78 as if fully set forth herein.

80.    When Mirvish agreed to purchase the Greenish Pollock, both Knoedler and Mirvish understood that a fundamental term of the parties' agreement was Knoedler's promise to market and attempt to sell the work.

81.    Knoedler and Mirvish understood and agreed that Mirvish would be entitled to half of the proceeds from the sale of the Greenish Pollock or to possession of the work in the event that Knoedler ceased marketing or attempting to sell the work.

82.    Knoedler has ceased marketing and attempting to sell the work, thereby depriving Mirvish of the fruits of its agreement with Knoedler.  Knoedler's conduct constitutes a breach of the implied covenant of good faith and fair dealing and automatically terminates Knoedler's conditional right to possess the Greenish Pollock.

83.    Knoedler has refused to return the Greenish Pollock to Mirvish, in further breach of the covenant of good faith and fair dealing.

### SIXTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing
### (Regarding the Square Pollock)

14

84.     Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 83 as if fully set forth herein.

85.     When Mirvish agreed to purchase the Square Pollock, both Knoedler and Mirvish understood that a fundamental term of the parties' agreement was Knoedler's promise to market and attempt to sell the work.

86.     Knoedler and Mirvish understood and agreed that Mirvish would be entitled to half of the proceeds from the sale of the Square Pollock or to possession of the work in the event that Knoedler ceased marketing or attempting to sell the work.

87.     Knoedler has ceased marketing and attempting to sell the work, thereby depriving Mirvish of the fruits of its agreement with Knoedler.  Knoedler's conduct constitutes a breach of the implied covenant of good faith and fair dealing and automatically terminates Knoedler's conditional right to possess the Square Pollock.

88.     Knoedler has refused to return the Square Pollock to Mirvish, in further breach of the covenant of good faith and fair dealing.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Regarding the Works)**

89.     Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 88 as if fully set forth herein.

90.     This Cause of Action is asserted in the alternative to Mirvish's First through Sixth Causes of Action.

91.     At Knoedler's behest and at Mirvish's expense, Mirvish paid Knoedler $1.6 million to invest in the Silver Pollock.

92.     At Knoedler's behest and at Mirvish's expense, Mirvish paid Knoedler $3.25 million dollars to purchase the Greenish Pollock and Square Pollock.

93.     Knoedler was enriched by each of the payments Mirvish made to Knoedler.

94.     The parties reasonably expected that, in exchange for Mirvish's purchase of and investment in the Works, Knoedler would market and attempt to sell the Works.

95.     Knoedler has ceased marketing and attempting to sell the Works.

96.     Mirvish has been deprived of the reasonably expected benefits of its investment in the Silver Pollock, because Knoedler has wrongfully retained Mirvish's investment in the work and has ceased marketing and attempting to sell this work.

97.     Mirvish has received no benefit from its purchase of the Greenish Pollock and Square Pollock, because Mirvish has not made a profit on these paintings and Knoedler has wrongfully denied it possession of these paintings.

98.     Knoedler has been unjustly enriched by the payments Mirvish made to Knoedler to invest in the Silver Pollock, because Knoedler has recorded a profit from Mirvish's payment, has ceased marketing and attempting to sell this painting, and has wrongfully retained the amount Mirvish invested in this painting.

99.     Knoedler has been unjustly enriched by the payments Mirvish made to Knoedler to purchase the Greenish Pollock and Square Pollock, because Knoedler has recorded a profit from Mirvish's payments, has ceased marketing and attempting to sell these paintings, and has wrongfully retained possession of these paintings.

100.     Equity and good conscience require that Knoedler repay Mirvish the amount it invested in the Silver Pollock.

101.    Equity and good conscience require that Knoedler deliver the Greenish Pollock and Square Pollock to Mirvish.

## EIGHTH CAUSE OF ACTION
### Declaratory Judgment under 22 U.S.C. §§ 2201-02
### (Regarding the Greenish Pollock and the Square Pollock)

102.    Mirvish repeats and realleges the allegations contained in Paragraphs 1 through 101 as if fully set forth herein.

103.    When Mirvish agreed to purchase the Greenish Pollock from Knoedler, Mirvish and Knoedler agreed that Mirvish would be the sole owner of the Greenish Pollock, but that Knoedler had a conditional right to possess the work in order to market and attempt to sell the work.

104.    When Mirvish agreed to purchase the Square Pollock from Knoedler, Mirvish and Knoedler agreed that Mirvish would be the sole owner of the Square Pollock, but that Knoedler would have a conditional right to possess the work in order to market and attempt to sell the work.

105.    As a result of Mirvish's payments to Knoedler to purchase the Greenish Pollock and the Square Pollock, Mirvish is the sole owner and has clear title to both of these works.

106.    Knoedler has ceased marketing and attempting to sell these works.  As a result, Knoedler's conditional right to possess the works has terminated, and Mirvish is entitled to immediate possession of the works.

107.    Knoedler has denied that Mirvish is the sole owner of the Greenish Pollock and Square Pollock and has refused to deliver either of these works to Mirvish, thereby creating a case or controversy within the scope of The Declaratory Judgment Act, 22 U.S.C. §§ 2201-02.

108.    Mirvish is entitled to a declaration that it is the sole owner of the Greenish Pollock and the Square Pollock.

109.    Mirvish is entitled to a declaration that it is entitled to sole possession of the Greenish Pollock and the Square Pollock by virtue of its sole ownership interest in these works and Knoedler's failure to market and attempt to sell these works.

### PRAYER FOR RELIEF

WHEREFORE, Mirvish respectfully requests that the Court enter a judgment:

A.    Awarding it restitution of the $1.6 million that it paid for its 50% investment interest in the Silver Pollock;

B.    Declaring that Mirvish is the sole owner of the Greenish Pollock and the Square Pollock;

C.    Declaring that Mirvish is entitled to immediate possession of the Greenish Pollock and the Square Pollock;

D.    Ordering that Knoedler immediately deliver to Mirvish the Greenish Pollock and the Square Pollock; and

E.    Awarding any other relief the Court deems just and proper.

Dated:  February 22, 2013
        New York, New York

                              **BOIES, SCHILLER & FLEXNER LLP**

                        By:   _Nichols A. Gravante_
                              Nicholas A. Gravante, Jr.
                              575 Lexington Avenue
                              New York, New York 10022
                              Telephone: (212) 446-2300
                              Facsimile: (212) 446-2350
                              Email: ngravante@bsfllp.com


                              Luke Nikas
                              10 North Pearl Street
                              Albany, New York 12207
                              Telephone: (518) 434-0600
                              Facsimile: (518) 434-0665
                              Email: lnikas@bsfllp.com

                              *Attorneys for Plaintiffs*

19

# EXHIBIT 1

# KNOEDLER & COMPANY

— ESTABLISHED 1846 —

19 EAST 70 STREET  NEW YORK NEW YORK 10021

# FAX

May 15, 2002

TO: David Mirvish
FROM: Per Haubro Jensen

Dear David,

Ann asked me to fax you the following information relating to Jackson Pollock *Untitled* c. 1949, oil, enamel and aluminum paint on masonite mounted on wood, 15 x 28 1/2 inches.

As discussed, we are expecting the following wire transfers from you:

May 27th, 2002           US$ 1 million
August 2nd, 2002         US$ 600,000.00

Our banking information is as follows:

HSBC Bank USA
1790 Broadway
New York, NY 10019
ABA # 021001088
Recording account # 627706916
Beneficiary: Knoedler Gallery

Please do not hesitate to call me if I can be of any further assistance

Sincerely,

Per Haubro Jensen

TEL 212 794-0550  FAX 212 772-6932
WWW.KNOEDLERGALLERY.COM

# EXHIBIT 2



**MIRVISH PRODUCTIONS**
Ed Mirvish, Chairman      David Mirvish, President
284 King Street West, Toronto, Ontario, Canada M5V 1J2   Tel: (416) 593-0351·   Fax: (416) 593-9221

Ann Freedman
Knoedler Gallery
19 East 70th Street
New York, NEW YORK 10021
Fx: (212) 288-2299

Dear Ann,

The following is the basis on which I can participate in the purchase of the Jackson Pollock *Untitled* 1949, Oil and enamel on canvas mounted on masonite, 18 x 23 inches, signed and dated lower center: "Jackson Pollock 49".

I will need an invoice for the full cost of $2,500,000 US issued to the David Mirvish Gallery with clear title. I will pledge the painting to the Canadian Imperial Bank of Commerce who will lend me $1,250,000 US towards the purchase price and the costs of this loan will be born by the David Mirvish Gallery at my expense. I will forward this money to Knoedler. Knoedler or you, or jointly, will provide a non recourse loan of $1,250,000 US to me, bearing no interest, which you will pay on my behalf to the owner of the painting to complete the purchase. This will entitle you (Knoedler and you) to recoup from 50% of the price at which the painting is sold, firstly the loan of $1,250,000 and secondly, any profit beyond this amount. From my half of the proceeds of the sale, I will repay the bank and retain my share of the profits. The bank will register their interest in the painting either in Canada or the United States or both. I am in the process of obtaining a New York State resale number, which I will provide to you as soon as possible.

If the painting is unsold at the end of two years, I would suggest that we consider buying each other out and we can discuss what would be the best mechanism to do so at that time.

If you feel comfortable with the above, please sign this letter and fax it back to me at 416-593-9381 and I will arrange for wire transfer of the payment this coming Thursday morning, December 18, 2003.

Sincerely,

David Mirvish

THE ROYAL ALEXANDRA THEATRE          CANON THEATRE          THE PRINCESS OF WALES THEATRE

# EXHIBIT 3

December 16, 2003

David Mirvish Gallery
284 King Street West
Toronto, Ontario M5V 1J2
CANADA

**Invoice**                                                    #   4449

**Jackson Pollock**
*Untitled*
1949
Oil and enamel on canvas mounted on masonite
18 x 23 inches
Signed and dated lower center: "Jackson Pollock
49"
A 12276

**Provenance**
The Artist
Private Collection, Switzerland
Private Collection, New York



|                            |                  |
|----------------------------|------------------|
|                            | $2,500,000.00    |
| Subtotal:                  | $2,500,000.00    |
| Sales Tax:   (Out of State)|                  |
| **TOTAL PAYABLE:**         | **$2,500,000.00**|

Wire Transfer Information:

HSBC Bank
1790 Broadway
New York, NY 10019
ABA# 021001088
Account# 627706916
Beneficiary: Knoedler & Company

# EXHIBIT 4

# KNOEDLER & COMPANY

— ESTABLISHED 1846 —

19 EAST 70 STREET  NEW YORK NEW YORK 10021

December 18th, 2007

David Mirvish
284 King Street West
Toronto, Ontario
Canada M5V 1J2

INVOICE:

| Jackson Pollock | | |
|---|---|---|
| Untitled, 1950 | purchase price | US$4,000,000.00 |
| Oil and aluminum paint on masonite | purchase loan | (US$2,000,000.00) |
| 22 X 22 inches | payable | US$2,000,000.00 |
| | deposit received | (US$500,000.00) |
| | Balance due | US$1,500,000.00 |

Wire transfer information:
HSBC Bank
1790 Broadway
New York, NY 10019
ABA # 021001088
Account # 627706916
Beneficiary: Knoedler & Company

MRMDQS33

794-0558